## UNITED STATES
v.
### Solomon McNAIR.
### Crim. No. 61456.

United States District Court
District of Columbia.
Dec. 21, 1955.

Alfred Burka, Asst. U. S. Atty. for District of Columbia, Washington, D. C., for the United States.

Leonard S. Hayes, Washington, D. C., for defendant.

HOLTZOFF, District Judge.

This is a motion by the defendant, who is incarcerated in the penitentiary, to vacate the sentence imposed on him and for leave to withdraw the pleas of guilty pursuant to which the sentences were imposed, and to enter pleas of not guilty. The motion is an extraordinary one in several respects.

The crimes for which the defendant was sentenced were committed in September, October and December of 1937. He pleaded guilty to the indictments for these offenses on February 13, 1938 and was sentenced by Judge O'Donoghue, who died some years ago. There were 17 indictments involved, 16 of them charging 16 different robberies and one charging an assault with intent to kill. The defendant pleaded guilty to each one.

Under the indeterminate sentence law as it then existed, the defendant was sentenced to an indeterminate sentence of three to four years on each indictment, the sentences to be served consecutively. In other words, the sentences aggregated 51 years to 68 years,—in effect a life sentence. It should be observed that the possible maximum that could have been imposed in each case was 15 years.

■ The defendant, after the expiration of 17 years from the time of sentence and long after the judge who sentenced him has died, is now asking leave to withdraw his pleas of guilty and enter pleas of not guilty, and of course thereby to vacate the sentences. Although the motion purports to be made under Section 2255 of Title 28 of the United States Code, it must be governed by Rule 32(d) of the Federal Rules of Criminal Procedure, 18 U.S.C. That Rule provides that a motion to withdraw a plea of guilty may be made only before sentence is imposed; but to correct manifest injustice the Court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea.

■ A heavy burden rests upon a defendant who seeks to withdraw his plea of guilty after he has been sentenced. That burden is particularly accentuated when a long period has elapsed after the plea of guilty was entered. If these pleas of guilty are set aside and the defendant is permitted to enter pleas of not guilty, the probability is that the Government would not be able to try these cases, and the defendant would go free. No doubt some of the witnesses may have died; others may have disappeared, and those who are available may not recall all of the details and may not be able to withstand a rigorous cross-examination.

■■ It would be a grave injustice to the public to take the action which defense counsel now seeks. As Mr. Justice Cardozo so eloquently observed, justice is due to the accuser as well as to the accused.[1] We must always remember that the purpose of the criminal law is to protect the public.

[1] "Justice, though due to the accused, is due to the accuser also. The concept of fairness must not be strained till it is narrowed to a filament. We are to keep the balance true." Snyder v. Massachusetts, 291 U.S. 97, 122, 54 S.Ct. 330, 338, 78 L.Ed. 674.

■ On the other hand, there has been no showing here of any injustice to the defendant, either manifest or otherwise, as the rule requires. There is no claim that the defendant is innocent. In fact, with commendable candor, counsel for the defendant expressly admits that the defendant participated in the crimes for which he was sentenced. There is no contention that the pleas of guilty were made under a misapprehension or were induced by pressure or persuasion. The only ground advanced in support of the motion is that the defendant pleaded guilty without being represented by counsel. It is conceded, however, that counsel was appointed for him between the time that he entered his pleas of guilty and the time of sentence, and that he was represented by counsel at the time of sentence.

■ Even without regard to the last-mentioned circumstance, it must be borne in mind that the case of Johnson v. Zerbst,[2] laid down the basic principle now accepted throughout the Federal judicial system, that a defendant appearing at arraignment without counsel must be apprised of his right to counsel and is entitled to have counsel appointed to represent him if he is unable to retain counsel, unless he affirmatively waives that right. Such is the rule now prevailing. Johnson v. Zerbst is an important milestone in the history of human liberty. That decision was, however, rendered subsequently to the disposition of the instant case. It involved a defendant who pleaded not guilty and was convicted by a jury. Here the conviction was on a plea of guilty. It could not have been intended that a retroactive effect should be given to that decision, to the extent of providing for a wholesale delivery of all Federal penitentiaries. In many Federal courts prior to that decision, it was not the practice to apprise defendants of their right to counsel or to appoint counsel for them, because this was not considered part of the constitutional right of counsel.[3] The mere fact, standing alone, that at the time of arraignment and at the time of entry of the plea of guilty a defendant was not represented by counsel is not sufficient to justify setting aside the sentence and withdrawal of the plea of guilty, if the proceedings took place prior to the decision in Johnson v. Zerbst.

■■ The only matter of which the defendant actually complains is the length of the sentence. Disappointment at the sentence imposed does not constitute a ground for granting leave to withdraw a plea of guilty. Moreover, it is inappropriate for a judge to pass upon the propriety of a sentence imposed by another judge of coordinate jurisdiction. This consideration is accentuated by the length of time that has elapsed, because no judge can have before him at this time all of the circumstances that may have actuated the sentencing judge in 1938.

■ The Court might make these additional observations. It is a matter of common knowledge among those familiar with the enforcement of the criminal law in the District of Columbia that there was a wave of robberies during the decade beginning in 1930, and that in order to suppress it judges of this Court followed the practice of imposing very severe sentences, more severe than those that have been often imposed at a later period. Temporarily, at least, this course resulted in a considerable reduction in crimes of violence in the District of Columbia. After World War II the practice seems to have been to pass sentences somewhat shorter than those that had been frequently imposed previously. During the past two or three years this Court has been imposing, on the whole, sentences that are more severe than those often passed theretofore. Possibly this is one of the reasons, coupled with the effective and efficient work of the local

2. 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461.

3. Bute v. Illinois, 333 U.S. 640, 660–662, 68 S.Ct. 763, 92 L.Ed. 986.

Police Department, why statistics show a considerable reduction of crime in the District of Columbia during the past two years, although the national average has increased.

It is a well-known fact, of course, that severity of punishment alone will never permanently solve the crime problem, any more than treating a symptom can always cure a disease. But it is also true that the imposition of a series of severe sentences frequently, temporarily at least, tends to suppress a local crime wave. Be that as it may, the alleged severity of the sentence is no ground for the granting of a motion such as this.

It must be also noted that the defendant is not without remedy, as against the severity of the sentence, if in fact the sentence should be deemed excessive, because he may apply for Executive clemency to the President through the Office of the Attorney General.

The motion is denied.