NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1130
_____

UNITED STATES OF AMERICA

v.

WILLIE BROOKS,
                    Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Criminal No. 07-cr-00705-001
(Honorable Gene E.K. Pratter)
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 23, 2011

Before:  McKEE, *Chief Judge*, SCIRICA and GARTH, *Circuit Judges*.

(Filed: June 14, 2011)
_____

OPINION OF THE COURT
_____

SCIRICA, *Circuit Judge*.

After steadfastly insisting on presenting his case to a jury throughout the

protracted pre-trial process, Willie Brooks abruptly informed his attorney of his desire to

plead guilty to two counts of unlawful possession of a firearm by an armed career

criminal, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e), just as his oft-continued trial

was set to commence. Prior to sentencing, however, Brooks moved to withdraw his guilty plea. The gist of his motion was twofold. First, he claimed to have believed his attorney had not zealously formulated a defense on his behalf and was inadequately prepared for trial. Second, he alleged his attorney provided erroneous advice regarding his likely sentencing exposure. Troubled by his attorney's alleged lack of devotion to his cause and purportedly operating under the mistaken impression that he would receive less than the mandatory minimum of fifteen years' imprisonment, Brooks claimed to have believed he had "no other choice" but to plead guilty. After conducting an evidentiary hearing, the District Court denied Brooks's motion. Because the court did not abuse its discretion in rejecting Brooks's attempt to withdraw his guilty plea, we will affirm.

I.

Brooks, represented by his attorney, Kai Scott, pleaded guilty in open court on January 26, 2009, to both counts charged in the indictment.[1] As mandated by Fed. R.

---

[1] After witnessing Brooks speed through a red light on July 13, 2007, Newtown Township Police Officer Paul Deppi attempted to effect a traffic stop. Brooks proved unwilling to submit, however, and he fled at high speeds, leading Deppi and Officer Christopher Joseph on a chase through Tyler State Park that ended only after Brooks had struck both officers' patrol vehicles with his minivan. Once halted, Brooks ignored instructions to place his hands above his head and instead appeared to reach toward the passenger seat. Duly alarmed, Joseph smashed Brooks' passenger window—which had been damaged during the mid-chase collision—with the butt of his service weapon, and Deppi deployed his Taser in a mildly successful effort to subdue the uncooperative Brooks, whom the officers eventually removed from the van and placed in handcuffs. In the course of executing a search warrant on Brooks' minivan, detectives seized a black duffle bag in which they found a Smith & Wesson 9mm handgun loaded with 15 rounds, including one in the chamber. The gun was registered to Brooks' girlfriend, who later pleaded guilty to being a straw purchaser of the firearm on Brooks' behalf. Pennsylvania State Police determined the gun was a ballistics match to bullets fired at police during an altercation in Radnor Township on December 6, 2006. Brooks was indicted for both the

2

Crim. P. 11(b), the court engaged Brooks in a lengthy change-of-plea colloquy. While under oath, Brooks represented (1) he was satisfied with his attorney's advice and advocacy; (2) he understood the charges against him and recognized that, by pleading guilty, he was voluntarily relinquishing a host of constitutional and statutory rights; (3) he had not received any agreement or promises from the government in exchange for his plea; (4) the prosecutor had accurately recited the factual and legal basis for the plea; (5) he understood he faced a mandatory minimum sentence of fifteen years' imprisonment and could be sentenced, at the court's discretion after reviewing the sentencing guidelines, to a term of life imprisonment; (6) he appreciated he would be estopped from withdrawing his guilty plea should the court impose a sentence more severe than either he or his attorney anticipated; and (7) his decision to change his plea had been made of his own accord and was not the product of threats or coercion.

On June 8, 2009, the date on which Brooks's sentencing hearing had been scheduled to take place, Brooks moved for the appointment of new counsel and announced he wished to withdraw his guilty plea. New counsel Wayne Maynard was appointed on June 11, 2009, and the court held an evidentiary hearing on December 10, 2009. Brooks, testifying again under oath, claimed he felt more or less obligated to plead guilty because he believed Scott had not devised a coherent trial strategy and because Scott had led him to believe he would "probably get no more than 15 years [in prison]." Scott forcefully refuted Brooks's characterization of her representation. Despite having

Newtown and Radnor incidents. *United States v. Brooks*, No. 07-705-1, 2010 U.S. Dist. LEXIS 57650 at *1-3 (E.D. Pa., May 24, 2010).

conveyed her assessment that the case would be "very difficult to win," she remembered her client being "emphatic about going to trial," and she chronicled the manner in which she prepared accordingly. She also recalled counseling Brooks about his likely sentencing exposure. She testified she told him that, based on his classification as an armed career criminal, his criminal history category of VI and the corresponding offense level of 34 would subject him to at least a mandatory minimum sentence of fifteen years.

The court denied Brooks's motion.[2] Finding Brooks had failed to establish a "fair and just" reason warranting withdrawal of his guilty plea, the court reasoned Brooks had neither supported his weak assertion of innocence with exculpatory evidence in the record nor demonstrated sufficiently strong justifications for his attempted withdrawal. The court deemed Brooks's "meager and disingenuous" presentation, in which he asked the court to "indulge his whims" and absolve him of "the consequences of his own knowing and voluntary actions," an affront to "the integrity of the judicial system." *United States v. Brooks*, No. 07-705-1, 2010 U.S. Dist. LEXIS 57650 at *11-12 (E.D. Pa., May 24, 2010). The court sentenced Brooks to 262 months' imprisonment on each of the counts, to be served concurrently, followed by five years' supervised release. Brooks timely appealed.[3]

II.

---

[2] Throughout this opinion, we will cite to the District Court's Second Amended Memorandum, which was filed on May 24, 2010.

[3] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291.

"We review a district court's ruling denying a defendant's motion to withdraw his guilty plea before sentencing pursuant to an abuse of discretion standard." *United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003). "The district court retains a great deal of discretion to deny a withdrawal motion." *United States v. Jones*, 979 F.2d 317, 318 (3d Cir. 1992), *superseded by statute on other grounds as stated in United States v. Robertson*, 194 F.3d 408, 414 (3d Cir. 1999). "[A] guilty plea is a grave and solemn act." *Brady v. United States*, 397 U.S. 742, 748 (1970). Accordingly, it "may not automatically be withdrawn at the defendant's whim." *United States v. Brown*, 250 F.3d 811, 815 (3d Cir. 2001). Rather, the defendant bears a "substantial" burden: he must persuade the court a "fair and just reason" exists for permitting withdrawal. *Jones*, 336 F.3d at 252 (quoting Fed. R. Crim. P. 11(d)(2)(B)). In assessing whether a defendant has satisfied this burden, a court must consider "(1) whether the defendant asserts his innocence; (2) the strength of the defendant's reasons for withdrawing the plea; and (3) whether the government would be prejudiced by the withdrawal." *Id.*[4]

## A.

The first factor requires a defendant both to proclaim his innocence and to fortify this assertion by identifying exculpatory evidence in the record. *See Brown*, 250 F.3d at 818 ("Bald assertions of innocence . . . are insufficient to permit a defendant to withdraw

---

[4] Because "the Government is not required to show prejudice when a defendant has shown no sufficient grounds for permitting withdrawal of a plea," *United States v. Martinez*, 785 F.2d 111, 116 (3d Cir. 1986) (internal quotation marks omitted), the District Court confined its analysis to the first two prongs of the test outlined in *Jones*. Given the inadequacy of Brooks's presentation on these prongs, we too decline to undertake an extended prejudice inquiry.

her guilty plea. Assertions of innocence must be buttressed by facts in the record that support a claimed defense.") (internal quotation marks omitted). Moreover, after accepting responsibility for the charged offenses under oath at a properly conducted Rule 11 colloquy, a defendant must "not only reassert innocence, but give sufficient reasons to explain why contradictory positions were taken before the district court." *Jones*, 979 F.2d at 318; *see also Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.").

In evaluating Brooks's showing on this front, the District Court discerned scant support for the proposition that Brooks had proclaimed his innocence and even less support for the notion that he had "provided . . . record facts to 'buttress' any such assertion with any recognizable defense." *Brooks*, 2010 U.S. Dist. LEXIS 57650 at *11.[5] At the hearing on Brooks's motion to withdraw his guilty plea, Maynard encouraged the court to view his client's initial commitment to pursuing the case to trial as tantamount to a profession of innocence. After musing that this interpretation would necessitate "a leap of faith of some sort," the District Judge, speaking from the bench, addressed Brooks's inability to muster support for this purported assertion:

---

[5] At the hearing on his motion to withdraw the guilty plea, Brooks intimated he was in possession of information that might have gone toward his defense. Despite being prompted by his attorney to divulge "the potential value" of this information, Brooks declined to reveal its substantive content, opting instead to save it for the trial he hoped the District Court would order. Even assuming Brooks did possess such information, his

6

> [E]ven if you had actually articulated in words of one or two syllables a claim of actual innocence, that simple claim is not sufficient under the cases to show that you have a fair and just reason for withdrawing your guilty plea. I must say that everything I know about this case would suggest, indeed, that the evidence is inconsistent with any claim of innocence, if you had made such a claim. And I'm going to assume that Mr. Maynard has labored mightily and with the highest professional talent to buttress your position but he has been unsuccessful because he could not be successful in this case given the lack of evidence to support the notion that you could, with any believability, assert actual innocence.

Furthermore, in its order denying Brooks's motion, the court found his "excuses for having taken numerous contradictory positions under oath at his guilty plea hearing as compared to his December 10 story were, to say the least, unpersuasive and disrespectful, not only of the Court but of his own character and the value of his word." *Brooks*, 2010 U.S. Dist. LEXIS 57650 at *11.

Given the weak nature of Brooks's alleged assertion of innocence, his inability to direct the court's attention to evidence that might have exonerated him of the charged offenses was doubly damning. And, as the court concluded, Brooks's failure to furnish a valid rationale for repudiating the statements he offered during the Rule 11 colloquy further undermined the plausibility of his assertion of innocence. We find the court's logic sound and agree that application of the first factor weighed against granting Brooks's motion.

## B.

Tacitly acknowledging the manifest weakness of his showing on the first factor, Brooks tries to discount its significance and to focus instead on the second factor, i.e., the

---

calculated reticence leaves us unable to disturb the court's finding as to the dearth of

supposed strength of his justifications for attempting to withdraw his plea. As noted, Brooks staked his motion on Scott's allegedly lackluster preparation for trial and on her alleged failure to offer accurate advice about Brooks's possible sentencing exposure. The District Court, however, found Brooks's "11th hour allegations against his former attorney are without merit and are unavailing to him as a basis upon which to permit a wholesale abandonment of his many sworn statements at his guilty plea hearing." *Brooks*, 2010 U.S. Dist. LEXIS 57650 at *12. Because the court's findings were premised on credibility determinations made after observing Brooks and Scott testify, we are satisfied the court did not abuse its discretion in labeling insufficient Brooks's proffered reasons for attempting to withdraw his plea.

"The good faith, credibility and weight of a defendant's assertions and those made on his behalf in support of a motion [to withdraw a guilty plea prior to sentencing] are preeminently issues for the hearing court to decide." *United States v. Washington*, 341 F.2d 277, 281 (3d Cir. 1965). Based on the testimony provided at the evidentiary hearing, the court concluded Brooks's "reasons for pleading guilty—and his reasons for wanting to withdraw that plea—are simply not credible, especially in the face of Ms. Scott's wholly credible account recounting the circumstances leading up to and surrounding Mr. Brooks's guilty plea." *Brooks*, 2010 U.S. Dist. LEXIS 57650 at *12. During the hearing on Brooks's motion to withdraw his plea, the court stated:

> I believe totally Ms. Scott when she tells me she was prepared to do her
> level best for you, and that she had prepared that which she could prepare.
> But a lawyer, such as Ms. Scott, cannot make up stuff and go through the

evidence buttressing his alleged assertion of innocence.

8

trial because somebody wants a trial. A lawyer is obliged to have a reason for submitting evidence and making arguments in court on behalf of a client. I believe that she is credible when she tells me that she was ready, she was willing and she was able to proceed on your behalf. . . .

But more importantly, when we were together, in January of 2009, you had multiple opportunities to tell me of any discomfort or lack of conviction that you had with respect to entering a guilty plea. And I find it extremely distressing that you would take an oath so lightly as to now come and say that, well, you were just saying what you thought I wanted to hear. So I don't know . . . when you're telling me the truth, and I certainly have no reason to believe you here today.

Such credibility findings are committed in the first instance to the discretion of the trial judge. *See United States v. Trott*, 779 F.2d 912, 915 (3d Cir. 1985) ("[E]valuation [of the defendant's demeanor when entering a guilty plea] is primarily within the province of the district court."); *Gov't of the Virgin Islands v. Berry*, 631 F.2d 214, 220 (3d Cir. 1980) ("The trial court recognized that credible assertions of innocence by the defendant are of considerable significance, but found defendant's assertions here incredible.").

Beyond Brooks's affirmation at the Rule 11 colloquy that he was satisfied with Scott's advice and advocacy, the court found Brooks's allegations concerning Scott's representation not persuasive for several reasons. At the hearing on Brooks's motion to withdraw his plea, Scott recounted the steps she had taken on her client's behalf. Heeding Brooks's instruction to prepare for trial, Scott moved to sever the two charges and to suppress evidence seized at the time of Brooks's arrest. Although the court ultimately denied both motions, it conducted a suppression hearing at which Scott vigorously argued her client's position. Scott requested and was granted several continuances in order to gather additional evidence, including an independent ballistics analysis, intended to

9

bolster Brooks's defense at trial. And the court rejected Brooks's specious contention that Scott's failure to develop either an alibi or a justification defense demonstrated a lack of fidelity to his cause.[6] Brooks eventually conceded Scott had simply informed him that developing a defense to the charges was "going to be hard," a reality the court attributed to Brooks's clear culpability.

As for Scott's allegedly erroneous sentencing advice, the court permissibly accorded little weight to Brooks's assertion that Scott had counseled him to anticipate his maximum sentencing exposure to be in line with the mandatory minimum of fifteen years. Scott testified at length about her discussions with Brooks regarding how the sentencing guidelines would likely apply were he to plead guilty, and the court found her testimony credible.[7] Nevertheless, because the court explicitly and accurately

---

[6] Although Brooks testified obliquely about possessing a potential alibi defense, he admittedly never relayed any such information to Scott during her time as his attorney. And, at Brooks's urging, Scott sent her investigator to speak with Brooks's landlord about alleged threats and vandalism that might have served to underpin a justification defense. The investigator's repeated attempts to locate the landlord proved fruitless, and Scott called off the search when Brooks informed her the alleged incidents occurred more than six months prior to his arrest. Although Brooks attempts to impugn Scott for failing to pursue this defense more assiduously, Scott reasonably believed a justification defense could not be predicated on such remote events and chose to allocate resources elsewhere. *See United States v. Paolello*, 951 F.2d 537, 540-41 (3d Cir. 1991) (adopting "a restrictive view of the justification defense in the context of 18 U.S.C. § 922 charges" and requiring the defendant to prove "he was under unlawful and present threat of death or serious bodily injury" as one of the defense's essential elements); *United States v. Alston*, 526 F.3d 91, 96 n.7, 97 (3d Cir. 2008) ("Only in rare circumstances will anything but an immediate emergency constitute a present threat. . . . The defendants who have been granted the defense faced split-second decisions where their lives, or the lives of others, were clearly at risk.") (internal quotation marks omitted).

[7] Indeed, it is difficult to reconcile Brooks's willingness to rely on Scott's predictions about his sentence with the skepticism he allegedly harbored about her reliability in all other respects.

admonished Brooks regarding his maximum potential exposure and the court's discretion during the Rule 11 colloquy, Scott's alleged conjectures about Brooks's sentence were legally "irrelevant." *United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007); *see also United States v. Mustafa*, 238 F.3d 485, 492 (3d Cir. 2001) ("[A]ny alleged misrepresentations that [the defendant's] former counsel may have made regarding sentencing calculations were dispelled when [the defendant] was informed in open court that there were no guarantees as to sentence, and that the court could sentence him to the maximum.").

Required to set forth strong reasons for withdrawal, Brooks instead offered only dubious allegations that were flatly rebutted by Scott. Having observed Brooks testify at both hearings, the court declared it had "no doubt that at the time he entered his guilty plea he did so with a full appreciation of the import of his actions, admitting all the facts attendant to the elements of the crimes with which he was charged." *Brooks*, 2010 U.S. Dist. LEXIS 57650 at \*12; *see also See DiFederico v. Rolm Co.*, 201 F.3d 200, 208 (3d Cir. 2000) ("[T]he district court's findings involved credibility determinations which are supported by the record and which we will not second-guess."). Because Brooks failed to proffer sufficiently strong reasons for permitting withdrawal of his plea, the court properly found this factor weighed against granting his motion.

### III.

Brooks has not carried his "substantial" burden of demonstrating a "fair and just reason" for withdrawing his guilty plea. *See Jones*, 336 F.3d at 252. Therefore, we will affirm the judgment of the District Court.

11